UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

ALBERTO RAMOS,                                    Case No.: 23-cv-09441

                          Plaintiff,          **AMENDED COMPLAINT**

         -against-                              Plaintiff Demands a
                                                Trial by Jury

PALM WEST CORPORATION,
PALM WEST CORPORATION D/B/A "THE
PALM",
LANDRY'S SEAFOOD HOUSE - NORTH
CAROLINA, INC.,
RICHARD HAMMILL, Individually
and CRAIG LEVY, Individually

                          Defendants.
-------------------------------------------------------------------X

        Plaintiff ALBERTO RAMOS (hereinafter referred to as "Plaintiff" or "RAMOS"), by and

through his attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendant

PALM WEST CORPORATION, PALM WEST CORPORATION D/B/A "THE PALM",

LANDRY'S SEAFOOD HOUSE – NORTH CAROLINA, INC., RICHARD HAMMEL[1],

Individually, and CRAIG LEVY, Individually, upon information and belief, as follows:

## NATURE OF CASE

    1.    Plaintiff complains pursuant to 42 U.S.C. §1981, Title VII of the Civil Rights Act of

1964, as codified, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), New York State Human Rights Law

Executive Law § 296 *et seq.* (the "NYSHRL"), and the Administrative Code of the City of New

York, Title 8 §§8-101 *et seq.* . (the "NYCHRL"),  New York Labor Law, Article 6, §§ 190 *et seq.*,

and Article 19, §§ 650 *et seq.*, tort law, promissory estoppel, quantum meruit, and unjust

---

[1] Caption and initial filing misspell Hammel.

enrichment, based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. §1367 seeking declaratory and injunctive relief and damages to redress the injuries that Plaintiff has suffered as a result of, *inter alia*, national origin discrimination, race discrimination, age discrimination, hostile work environment, retaliation, retaliatory work environment, wrongful termination, and/or constructive discharge, by Defendants.

## JURISDICTION AND VENUE

2.  Jurisdiction of this action is conferred upon this Court pursuant to 28 U.S.C. § 1343 as this action involves a Federal Question under Title VII.

3.  Defendants improperly removed this matter after a Summons with Notice was served but before a pleading was filed or served therefore not in accordance with 28 U.S.C. §1446.[2]

4.  This Court has supplemental jurisdiction over Plaintiff's state and city causes of action asserted herein pursuant to 29 U.S.C. § 1391(b)(2).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.  Around September 3, 2020, Plaintiff filed a Charge of Discrimination ("Charge") with the United States Equal Employment Opportunity Commission ("EEOC"). Plaintiff's EEOC charge number was 520-2020-05164.

6.  On September 26, 2023, the EEOC informed Plaintiff that due to a technical error the Plaintiff's Right to Sue Letter was not sent to Plaintiff or Plaintiff's Counsel. Accordingly, Plaintiff did not receive his Right to Sue Letter until October 25, 2023.

---

[2] Plaintiff intends to file a Motion to Remand due to lack of subject matter jurisdiction and Defendants' "fraudulent removal" of filing a partial Motion to Dismiss for lack of subject matter jurisdiction after removing the case improperly. See Miller v. Syracuse Univ., No. 5:21-CV-1073 (LEK/TWD), 2022 U.S. Dist. LEXIS 187037, at *7 n.2 (N.D.N.Y. Oct. 13, 2022) citing Katz v. Six Flags Great Adventure, LLC, No. 18-116, 2018 U.S. Dist. LEXIS 135913, 2018 WL 3831337, at *8-9 (D.N.J. Aug. 13, 2018).

7.   Accordingly, Plaintiff has satisfied all administrative prerequisites and is filing this lawsuit within ninety (90) days of receiving the Right to Sue Letter from the EEOC.[3]

8.   Venue is proper in this district because the events or omissions that give rise to the claims asserted herein occurred within the Southern District of New York.

### PARTIES

9.   Plaintiff, ALBERTO RAMOS (hereinafter "Plaintiff") is an individual, fifty-nine (59) year old male, of Puerto Rican descent, residing in the State of New York, County of Bronx. Plaintiff's first language is Spanish. Plaintiff was employed by Defendants PALM WEST CORPORATION and Defendant PALM WEST CORPORATION D/B/A "THE PALM" and Tryon & Stonewall Restaurant Inc. f/k/a Landry's Seafood House – North Carolina, Inc. (collectively hereinafter referred to as "THE PALM") from around 2003 until around April 8, 2022.[4]

10.   At all times material, Defendant PALM WEST CORPORATION and Defendant PALM WEST CORPORATION D/B/A "THE PALM" are domestic business corporations duly organized and existing under, and by the virtue of, the laws of New York that do business in New York.

11.   In 2020 Defendant PALM WEST CORPORATION and Defendant PALM WEST CORPORATION D/B/A "THE PALM" was assumed by Tryon & Stonewall Restaurant Inc. f/k/a Landry's Seafood House – North Carolina, Inc.[5]

12.   At all times material, THE PALM employees over fifty (50) individuals on a full-time or full-time-equivalent basis and thus Defendants meet the definition of an "employer" under all

---

[3] Defendants prematurely removed this case from Bronx County Supreme Court two days after the EEOC issued the Right to Sue.

[4] Around December 18, 2010, after approximately eight (8) years of employment, Plaintiff transferred from THE PALM's Puerto Rico location to THE PALM's restaurant, "PALM WEST," located at 250 West 50th Street, New York, New York 10019. For purposes of this lawsuit the unlawful events occurred after plaintiff's transfer and at PALM WEST.

[5] Plaintiff requests the right to correct the caption to list the proper entity instead of Landry's Seafood House – North Carolina, Inc.

applicable state and local statutes.

13.   At all times material, Defendant RICHARD HAMMEL (hereinafter referred to as "HAMMEL") was and is a sixty-eight (68) year old, Caucasian male, General Manager and Regional Director for THE PALM.

14.   At all times material, HAMMEL held supervisory authority over Plaintiff with the authority to hire, fire, and affect the terms and conditions of Plaintiff's employment, or to otherwise influence the decision-making regarding the same.

15.   At all times material, HAMMEL harassed, discriminated against, and retaliated against Plaintiff.

16.   At all times material, Defendant CRAIG LEVY (hereinafter referred to as "LEVY") is a Caucasian male and was the Assistant General Manager for THE PALM until around April 2018 when he was promoted to General Manager for THE PALM.

17.   At all times material, at times relevant hereto, CRAIG LEVY (hereinafter referred to as "LEVY") was the Assistant Manager, Assistant General Manager, and General Manager for THE PALM at PALM WEST.

18.   At all times material, Defendant LEVY held supervisory authority over Plaintiff with regards to his employment, controlling many tangible aspects of Plaintiff's job duties, including holding the power to hire, promote, and fire Plaintiff.

19.   As such, LEVY had the authority to hire, terminate, and affect the terms and conditions of Plaintiff's employment, or to otherwise influence decision-making regarding the same. At all times material, LEVY harassed and discriminated against Plaintiff.

20.   Around April 2018, HAMMEL was promoted to Regional Director for THE PALM and LEVY was promoted to HAMMEL's position.

**MATERIAL FACTS**

21.   Around December of 2010, Plaintiff transferred from THE PALM's Puerto Rico location to commence his employment as a Server for THE PALM's restaurant located at 250 West 50th Street, New York, New York 10019 ("PALM WEST").

22.   At all times material, Defendants were aware Plaintiff's first language was Spanish. However, Defendants failed to provide Plaintiff with a copy of the employee handbook in his first language, Spanish.

23.   Between December 18, 2010 and March 2016, Plaintiff was a good performer, focused on his work and increased his clientele. He was among the top-earning servers.

24.   At all times material, Plaintiff was aware of Defendants' discriminatory treatment towards Hispanics but was afraid of retaliation if he said anything.

25.   Around March 2016, Plaintiff and HAMMEL had a brief disagreement about a table, when HAMMEL, with one hand aggressively reached and held the back of Plaintiff's neck with a jolting force. Plaintiff was shocked and froze in disbelief of HAMMEL's actions.

26.   Jeff D. and former manager Manny witnessed this assault.

27.   Later that evening, Plaintiff called David G. former assistant manager for THE PALM to report the incident. When David called HAMMEL to confirm the story, HAMMEL called Plaintiff on HAMMEL's cell telling Plaintiff "as long as I am with The Palm, you have nothing to worry about with your shift or place in the company."

28.   Shortly after, Manny and David were both transferred to a different location for THE PALM.

29.   Fearful of his employment, Plaintiff never brought up the issue for the safety of his own employment.

30.   Between 2015 and April 2017, HAMMEL repeatedly made discriminatory comments such as "Puerto Ricans are lazy."

31.   Around April 2017, HAMMEL left for unknown reasons and LEVY was promoted and replaced HAMMEL as General Manager. Notably, HAMMEL trained LEVY prior to HAMMEL's departure.

32.   At all times material, Defendants' company policy stated schedules and stations were to be assigned based on seniority and rotated.

33.   However, during Plaintiff's employment, LEVY disregarded Defendants' policies, and informed Plaintiff that as long as LEVY was there, there was no rotation and he arbitrarily assigned schedules and stations.

34.   Defendants discriminated against Plaintiff on the basis of his race, national origin, and age.

35.   During Plaintiff's employment, both HAMMEL and LEVY called him "old man" and a "dinosaur," and asked when he was going to retire.

36.   During Plaintiff's employment, HAMMEL instructed THE PALM'S staff not to speak to each other in Spanish, even though many of the bussers' first language was Spanish. He also regularly insulted staffers with Spanish accents, claiming he could not understand them.

37.   HAMMEL has also regularly made comments about the waiters' work, accusing them of preparing coffee in an undesirable "Puerto Rican style."

38.   Both HAMMEL and LEVY have regularly commented, in response to perceived work mistakes, "this is not Puerto Rico, this is Palm West."

39.   On several occasions, when Plaintiff mentioned that Puerto Ricans are United States

citizens and have served in the U.S. Armed Forces, HAMMEL questioned whether Puerto Ricans are really Americans, and commented that "Puerto Ricans don't go to wars."

40.  HAMMEL and LEVY have also consistently favored THE PALM'S, non-Hispanic waiters, speaking to them more politely, and assigning them to work at the preferred tables where VIP customers typically were seated – ensuring that the Caucasian waiters consistently received more in tips each shift they worked.

41.  LEVY also consistently cancelled Plaintiff's shifts at the last minute, and treated other Hispanic waiters similarly. Non-hispanic waiters' shifts were rarely cancelled.

42.  Non-hispanic waiters were consistently able to work at least forty (40) hours per week, while Plaintiff and other Hispanic waiters tended to work thirty (30) hours per week or less. On multiple occasions, when the amount of work increased, HAMMEL and LEVY hired additional Caucasian waiters to cover the work, instead of increasing Hispanic employees' hours or promoting Hispanic Server Assistants that requested a promotion.

43.  Due to Defendants' unlawful discriminatory and retaliatory conduct Plaintiff was consistently unable to work thirty (30) hours or more per week which made Plaintiff ineligible for THE PALM'S health insurance plan. Plaintiff complained in response that they had been refusing to assign him to additional shifts; under the assigned schedule, he could not work more. Other Hispanic waiters similarly lost their health benefits – while, upon information and belief, white wait staff did not.

44.  Specifically, Salem (non-hispanic), Amadou (non-hispanic), Murat (non-hispanic), and Jeff D. (non-hispanic) and they started fifteen (15) years after Plaintiff. THE PALM did not get their hours cut nor were their insurance plans terminated.

45.  Non-hispanic employees earned in one day what Plaintiff made in one week.

46.   Around September 26, 2017, Plaintiff began complaining to LEVY that Defendants were discriminating against him on the basis of his race and national origin.

47.   LEVY responded with telling Plaintiff to contact corporate. Plaintiff told LEVY it would be futile to contact corporate if Plaintiff was making the complaint directly to LEVY and LEVY failed to take any remedial measures.

48.   On several occasions Plaintiff complained to Defendants about Defendants' discriminatory treatment towards Hispanics and non-hispanic employees. However, Defendants only retaliated against Plaintiff thereafter until Plaintiff was terminated and/or constructively discharged.

49.   Notably, as of October 2017, PALM WEST managers consisted of six individuals, four (4) Caucasian individuals, one (1) African American individual, and one (1) Hispanic individual that was transferred from Texas as a General Manager.

50.   Additionally, of the twenty-three (25) servers on staff at PALM WEST, only three (3) were Hispanic. Plaintiff was one of those three and not because he was hired by LEVY or THE PALM but was transferred.

51.   Contrastingly, of the thirteen (13) server-assistant positions at PALM WEST, eleven (11) individuals were Hispanic and the other two individuals were Caucasian and eventually promoted to a server position or was a transfer from another location.

52.   During the course of Plaintiff's employment, Defendants externally hired at least fifteen (15) non-Hispanic Servers rather than promote interested, qualified, internal Hispanic server assistants.

53.   Defendants discriminated against Hispanic employees with unequal pay, failing to promote qualified Hispanic employees instead of hiring less experienced non-hispanic

employees, and keeping Hispanic employees in lower paying positions.

54.   At all times material Defendants were and still are aware of the ongoing discriminatory practices on the basis of race, national origin, and age and failed to take any remedial measures.

55.   By way of example only, Plaintiff learned around November 30, 2017 that former employee, Tracye Shearin made a formal complaint to THE PALM's Human Resources Director, Rosemarie Whitlocke about Defendant HAMMEL's discriminatory comments in the workplace.

56.   Around February 2018, THE PALM received Plaintiff's counsel's letter of representation, indicating Plaintiff contemplated filing a lawsuit against Defendants.

57.   Around the same time, Plaintiff met Joyce from THE PALM's Human Resources Department regarding Plaintiff's coworkers' age discrimination complaint. Plaintiff complained to Joyce of Defendants' ongoing retaliatory treatment. However, Joyce disregarded Plaintiff's complaints and failed to take any remedial measures.

58.   Defendants thereafter increased their discriminatory mistreatment of Plaintiff. Fearful of losing his job, Plaintiff did not file his lawsuit at that time.

59.   In February 2018, LEVY retaliated against and discriminated against Plaintiff by changing Plaintiff's stations, reducing Plaintiff's stations to "deuces" that is tables with only two seats, thereby reducing Plaintiff's pay. Contrastingly, before Plaintiff made a complaint of discrimination, Plaintiff was assigned tables with eight (8) to ten (10) customers in a group in his station.

60.   Around August 2, 2018, and after seven (7) years of working lunch shifts, Defendants retaliated against Plaintiff by abruptly removing Saturday lunch shifts from Plaintiff's schedule. Defendants also stopped assigning "parties" to Plaintiff only.

61.   As a result of Defendants unlawful discriminatory and retaliatory conduct, Plaintiff's pay

significantly decreased. By way of example in September 2018, Plaintiff was assigned to a station where everyone had a party except for him.

62.  Around October 3, 2018, Defendants gave Plaintiff's non-hispanic coworkers three (3) to five (5) parties and none to Plaintiff.

63.  On February 20, 2019, Defendants retaliated against and discriminated against Plaintiff by removing Plaintiff's February 27, 2019 evening (4 o'clock p.m. to 10:30 p.m.) shift from his schedule.

64.  Between February 20, 2019 and October 29, 2019, Defendants discriminated and retaliated against Plaintiff on the basis of his age, race, national origin, and for making a complaint on this basis by giving Plaintiff between fourteen (14) to twenty-five (25) hour shifts. Accordingly, Plaintiff was ineligible for Defendants' health insurance plan.

65.  Defendants did not reduce Plaintiff's coworker's hours.

66.  Around October 29, 2019, Plaintiff complained to LEVY about intentionally not seating customers in his station thereby reducing his pay in retaliation to his previous complaints of discrimination and engaging in protected activities.

67.  LEVY told Plaintiff that he was the manager, disregarding Plaintiff's complaints and continued to retaliate against Plaintiff by not seating customers in Plaintiff's section .

68.  At all times material, Defendants and LEVY subjected Plaintiff to a retaliatory work environment. By way of example only, around November 8, 2019, the other servers had a party and Plaintiff had a party that served eight (8). Prior to the shift, LEVY erased Plaintiff's 8 table party and gave it to other servers leaving Plaintiff without a party.

69.  At all times material, Defendants and LEVY discriminated against and retaliated against Plaintiff adversely affecting Plaintiff's income and reputation.

70.   Thereafter, around December 4, 2019, Defendants changed Plaintiff's shifts and schedule as frequently as every week. Defendants assigned Plaintiff to shifts that he had not done in the fifteen years working with Defendants.

71.   Defendants subjected Plaintiff to this toxic work environment until around mid-March 2020 when Plaintiff received a text notification from LEVY removing a shift from Plaintiff's schedule.

72.   Additionally, around December 9, 2019, Plaintiff's frequent customer complained to LEVY that if Plaintiff did not serve them he would go to Morton's instead of PALM WEST. LEVY scolded Plaintiff for this customer's complaint.

73.   At all times material, Defendants subjected plaintiff to a hostile work environment on the basis of his race, national origin, age, and for engaging in protected activities.

74.   Defendants discriminated against and subjected Plaintiff to a hostile work environment on the basis of his race, national origin, and age.

75.   Defendants fostered a discriminatory, hostile work environment on the basis of Plaintiff's race, national origin, and age.

76.   Defendants wantonly and willfully discriminated and retaliated against Plaintiff on the basis of race, national origin, and age and subjected Plaintiff to a hostile work environment on the basis of race, national origin, and age.

77.   Defendants willfully perpetuated a hostile work environment filled with discrimination and retaliation based on race, national origin, and age.

78.   At all times material if Plaintiff received a good section LEVY would not seat anyone there.

79.   During this same time, LEVY pressured Plaintiff into pooling his tips with the other

servers but did not do the same to non-hispanic servers.

80.   The disparity between the number of tables assigned to Plaintiff and his colleagues was insulting. By way of example, Plaintiff's coworker with less experience as Plaintiff had twenty-three (23) tables while Plaintiff had three (3) tables.

81.   Around mid-March 2020, PALM WEST closed because of COVID-19.

82.   Since then, while other waiters have been recalled to work, Plaintiff has not. Plaintiff is uncertain whether or not he still has a job.

83.   Around April 11, 2020, Plaintiff's mother-in-law suffered a massive stroke and Plaintiff's mother passed away.

84.   Between around May 2020 until April 2022, Plaintiff informed Defendants he wanted to return to work but that he was handling deaths in the family and in different states.

85.   A PALM WEST employee Dee, informed Plaintiff that they were aware of what his familial situation and to call in when he was ready to return to work.

86.   Between 2020 and April 2022, THE PALM rehired HAMMEL as General Manager for PALM WEST and then transferred HAMMEL to THE PALM's Tribeca location.

87.   Around the same time, Plaintiff called into PALM WEST to reaffirm his interest in returning to work when Plaintiff learned through a manager that Plaintiff no longer worked at PALM WEST because he did not show up. When Plaintiff informed the Manager that Defendants were aware of Plaintiff's situation and he was told to call back when he was ready to return, the Manager told Plaintiff to talk to a lawyer or Defendants human resources department but that Plaintiff no longer worked there and he knew and everyone there know of Plaintiff.

88.   Notably, Plaintiff was still the oldest employee at the time.

**New York Labor Law (NYLL) Violations**

89.   Between December 2010 and 2015, Plaintiff worked approximately thirty (30) hours a week.

90.   Between 2015 and 2022, Plaintiff worked less than thirty (30) hours a week with the exception of the "busy season" which was between November to February wherein Plaintiff worked approximately forty (40) and in excess of forty (40) hours.

91.   By way of example only, in December 2017, Plaintiff worked approximately fifty (50) hours during the pay period of December 14, 2017 and December 20, 2017.

92.   Another example is during the pay period of December 21, 2017 and December 27, 2017, Plaintiff worked seventy-three (73) hours.

93.   At all times material, Defendants did not pay Plaintiff time and half for all hours worked in excess of forty (40) hours.

94.   Around October 25, 2018, Defendants sent Plaintiff home early after working three hours while everyone else continued working.

95.   THE PALM failed to pay Plaintiff for all hours worked and in accordance with New York Labor Laws.

96.   Defendants failed to pay Plaintiff and employees for all hours worked including overtime. Specifically, in October 2018 during the pay period of October 18, 2018 to October 24, 2018, Defendants' clock in and out system said an employee worked a total of 48.55 hours but the employee's paystub listed a total number of 41.84 hours.

97.   Defendants consistently and repeatedly underpaid Plaintiff for all hours worked and failed to pay Plaintiff proper overtime (time and a half) for hours worked in excess of forty (40) hours per week. As a result, Defendants owe Plaintiff a significant amount of overtime pay accrued

over approximately six (6) years.

98.   Defendants failed to keep accurate and adequate records of tips and wages paid to Plaintiff, deductions taken from his tips and wages, allowances or other credits taken by Defendants, and hours worked by Plaintiff as required by NYLL.

99.   Defendants scheduled Plaintiff on staff for his shift but then sent Plaintiff home early if business was slow while failing to pay Plaintiff for "Call in" pay in violation of NYLL.

100. Defendants failed to pay for all of the time its employees, including Plaintiff, worked for the benefit of the Defendants.

101. Additionally, Defendants discriminatorily had Plaintiff pool his tips with other servers without having any notice or policies, further reducing Plaintiff's pay.

**Effect on Plaintiff**

102. At all times material, Defendants harassed and discriminated against Plaintiff on the basis of his race, ethnicity, national origin, and age and they have retaliated against him because of his complaints about such discrimination, retaliation, and harassment.

103. Defendants' actions constitute a continuing violation of the law, and Plaintiff makes all claims under the continuing violation doctrine.

104. As a result of Defendants' discrimination, harassment, and retaliation – and their repeated failures to remedy or prevent their employees' and agents' discrimination, harassment, and retaliation, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

105. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary

losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

106. By way of example only, prior to September 2017, Plaintiff suffered from two heart attacks. Due to Defendants unlawful treatment, between March 2020 and April 2022, Defendants caused Plaintiff to suffer from severe emotional distress causing Plaintiff's blood pressure to be significantly elevated jeopardizing his overall health.

107. The above are just some of the examples of the pattern and practice of unlawful discriminatory, harassing, and retaliatory conduct to which Defendants or their agents subjected Plaintiff.

108. Plaintiff hereby requests reinstatement to his position.

109. As Defendants' actions were malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendants, jointly and severally.

110. Plaintiff claims unlawful constructive and/or unlawful actual discharge and also seek reinstatement.

111. Plaintiff claims alternatively (in the event Defendants claim so or that the Court determines) that Plaintiff is an Independent Contractor and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors.

112. Plaintiff claims a continuous practice of discrimination and retaliation and claim of continuing violations and make all claims herein under the continuing violations doctrine.

113. Plaintiff claims that Defendants discriminated against and unlawfully terminated and/or constructively discharged Plaintiff because of his race, national origin, and age and because he

complained or opposed the unlawful conduct of Defendants related to the above protected classes.

**AS A FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION AND RETALIATION**
**UNDER TITLE VII**
**<u>(AGAINST DEFENDANT THE PALM)</u>**

114. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint as if more fully set forth herein at length.

115. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) [Section 703] provides that it shall be an unlawful employment practice for an employer: "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . .

116. The exact number of employees at THE PALM is unknown, but upon information and belief, there are well more than the statutory minimum.

117. THE PALM engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by subjecting Plaintiff to discrimination on the basis of his race and age and retaliating against Plaintiff with respect to the terms, conditions or privilege of employment because of his opposition to the unlawful employment practices of Defendants by wrongfully terminating Plaintiff's employment and/or constructively discharging Plaintiff.

118. Defendants THE PALM violated the above and Plaintiff suffered numerous damages as a result.

**AS A SECOND CAUSE OF ACTION: DISCRIMINATION**
**UNDER NEW YORK STATE LAW**
**<u>(AGAINST ALL DEFENDANTS)</u>**

119. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this complaint as if more fully set forth herein at length.

120. New York State Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, [Effective January 19, 2016: familial status,] marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

121. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of Plaintiff's race, national origin, and age.

122. Plaintiffs hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law § 296.

123. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A THIRD CAUSE OF ACTION: RETALIATION**
**UNDER NEW YORK STATE LAW**
**(AGAINST ALL DEFENDANTS)**

124. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint.

125. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

126. Defendants engaged in an unlawful discriminatory practice by retaliating against Plaintiff

with respect to the terms, conditions or privileges of employment on the basis of Plaintiff's opposition to the unlawful practices of Defendants.

127. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law §296.

## AS A FOURTH CAUSE OF ACTION: AID & ABET UNDER NEW YORK STATE LAW (AGAINST ALL DEFENDANTS)

128. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of the complaint.

129. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under the article, or to attempt to do so."

130. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory and retaliatory behavior as stated herein.

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (AGAINST ALL DEFENDANTS)

131. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

132. The Administrative Code of the Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to

discriminate against such person in compensation or in terms, conditions or privileges of employment."

133. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff as set forth herein.

134. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

135. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SIXTH CAUSE OF ACTION FOR RETALIATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

136. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

137. The New York City Administrative Code Title 8, §8-107(1) (e) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter.. "

138. Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(1) (e) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

139. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State City Administrative Code Title 8.

140. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A SEVENTH CAUSE OF ACTION: AID AND ABET
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

141. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

142. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

143. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling, and coercing the above discriminatory, unlawful, and retaliatory conduct.

144. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

145. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS AN EIGHTH CAUSE OF ACTION FOR
INTERFERENCE WITH PROTECED RIGHTS
UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
(AGAINST ALL DEFENDANTS)**

146. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

147. New York City Administrative Code Title 8-107(19) Interference with protected rights states, in relevant part: It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

20

148. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A NINTH CAUSE OF ACTION FOR SUPERVISORY LIABILITY
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (AGAINST ALL DEFENDANTS)

149. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

150. New York City Administrative Code Title 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides:

151. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    i.   An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

    ii.   The employee or agent exercised managerial or supervisory responsibility; The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or The employer should have known of the employee's or agents discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

### AS A TENTH CAUSE OF ACTION

**SPREAD OF HOURS COMPENSATION UNDER NEW YORK LABOR LAW**

152. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this Complaint as if set forth more fully herein.

153. Defendants willfully violated Plaintiff's rights by failing to pay Plaintiff an additional hour of pay at minimum wage for each day worked more than ten (10) hours, in violation of the New York Minimum Wage Act and its implementing regulations, N.Y. Labor Law §§ 650 et seq.; 12 N.Y.C.R.R. § 142-2.4.

154. Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants his unpaid spread of hours compensation, reasonable attorneys' fees, and costs of this action pursuant to N.Y. Labor Law § 663 (1).

**AS AN ELEVENTH CAUSE OF ACTION**
**VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS OF**
**THE NEW YORK LABOR LAW**

155. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this Complaint as if set forth more fully herein.

156. Defendants failed to keep employee-specific records documenting, inter alia, actual hours worked in each week, in violation of N.Y. Labor Law §661 and 12 NYCRR 142-2.6.

157. Defendants failed to furnish statements with pay and hour information to Plaintiff, in violation of 12 NYCRR 142-2.7.

158. Due to Defendants' failure to keep accurate records of hours actually worked by Plaintiff, Defendants failed to pay Plaintiff for all hours worked including hours worked in excess of forty (40) hours.

159. On account of such violations, Defendants are liable to Plaintiff for actual, statutory

and liquidated damages.

## AS A TWELFTH CAUSE OF ACTION FOR
## SUPERVISORY LIABILITY UNDER THE NEW
## YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

160. Plaintiff repeats, alleges, and hereby incorporates by reference the preceding allegations contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

161. New York City Administrative Code Title 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides:

   a.  An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

   b.  An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

   c.  The employee or agent exercised managerial or supervisory responsibility; or

   d.  The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

   e.  The employer should have known of the employee's or agents discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory

conduct.

162. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A THIRTEENTH CAUSE OF ACTION
## FOR FAILURE TO PAY WAGES WHEN DUE,
## N.Y. LAB. L. § 195

163. Plaintiff repeats, alleges, and hereby incorporates by reference the preceding allegations contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

164. Defendants failed to pay Plaintiff all wages, including minimum wage and overtime wages, for the hours he worked for Defendants. The NYLL requires that wages be paid on an employee's regular payday for all hours worked.

165. Due to Defendants' failure to keep accurate records of hours actually worked by Plaintiff, Defendants underpaid Plaintiff by failing to pay Plaintiff at all for hours worked including hours worked in excess of forty (40) hours.

166. As a result of Defendants' willful and unlawful conduct, Plaintiff is entitled to an award of damages in an amount to be determined at trial and attorneys' fees.

## AS A FOURTEENTH CAUSE OF ACTION
## FOR OVERTIME WAGES
## UNDER NEW YORK LABOR LAW

167. Plaintiff repeats, alleges, and hereby incorporates by reference the preceding allegations contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

168. At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of New York Wage Regulations, specifically NYCRR Labor Section 138 *et seq*., in

addition to New York Labor Law §§ 2 and 651.

169.  Defendants failed to pay Plaintiff overtime wages for hours worked in excess of 40 hours per week at a wage rate of one and half (1.5) times the regular wage to which Plaintiff was entitled under New York Labor Law §652, in violation of N.Y.C.R.R. 137-1.3.

170. Due to Defendants' failure to keep accurate records of hours actually worked by Plaintiff, Defendants underpaid Plaintiff by failing to pay Plaintiff at all for hours worked including hours worked in excess of forty (40) hours.

171. Defendants violated Plaintiff's rights to overtime pay under Title 12 NYCRR 142-2.2.

172. Defendants also failed to pay Plaintiff an additional amount for hours worked in excess of10 hours per day.

173. Due to Defendants' New York Labor Law violations, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid overtime wages and an amount equal to his unpaid overtime wages in the form of liquidated damages, as well as reasonable attorneys' fees and costs of this action, including interest in accordance with NY Labor Law §1981(1- a).

**AS A FIFTEENTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK WAGE AND HOUR**
**LAW MINIMUM WAGE & WAGE THEFT**
**<u>(AGAINST ALL DEFENDANTS)</u>**

174. Plaintiff repeats, alleges, and hereby incorporates by reference the preceding allegations contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

175. Plaintiff was an employee of Defendants within the meaning of the New York Wage Regulations.

176. New York Labor Law states in relevant part as follows; §652 Minimum wage:

    a.  Statutory. Every employer shall pay to each of its employees for each hour worked a wage of not less than:

        i.   $8.75 on and after December 31, 2014,

        ii.  $9.00 on and after December 31, 2015, and until December 31, 2016, or, if greater, such other wage as may be established by federal law pursuant to 29

           U.S.C. section 206 or its successors or such other wage as may be established in accordance with the provisions of this article.

    b.  (a) New York City. (i) Large employers. Every employer of eleven or more employeesshall pay to each of its employees for each hour worked in the city of New York a wageof not less than:

        iii. $11.00 per hour on and after December 31, 2016,

        iv.  $13.00 per hour on and after December 31, 2017,

        v.   $15.00 per hour on and after December 31, 2018, or, if greater, such other wageas may be established by federal law pursuant to 29 U.S.C. §206 or its successors or such other wage as may be established in accordance with the provisions of this article.

177. New York Labor Law §663 states in relevant part as follows: By employee. If any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due. Any agreement between the employee, and the employer to work for less than such wage shall be no defense to such action.

178. Due to Defendants' failure to keep accurate records of hours actually worked by Plaintiff, Defendants underpaid Plaintiff by failing to pay Plaintiff at all for hours worked including hours worked in excess of forty (40) hours.

179. Attorneys' fees.  In any civil action by an employee or by the commissioner, the employee or commissioner shall have the right to collect attorneys' fees and costs incurred in enforcing any court judgment. Any judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal therefrom is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent.

## AS A SIXTEENTH CAUSE OF ACTION
## OF PROMISSORY ESTOPPEL

180. Plaintiff repeats, alleges, and hereby incorporates by reference the preceding allegations contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

181. Defendants made a clear and unambiguous promise of employment to Plaintiff and there was reasonable and foreseeable reliance by Plaintiff.

182. Plaintiff reasonably and foreseeably relied to his detriment on Defendants' promise.

183. Defendants breached its promise by wrongfully denying Plaintiff his pay based upon a discriminatory and retaliatory basis and/or not fulfilling such promise and representations by withholding pay for all hours worked including in excess of forty (40) hours.

184. Defendants underpaid Plaintiff by failing to pay Plaintiff at all for hours worked including hours worked in excess of forty (40) hours.

185. Additionally, Defendants breached its promises by constructively discharging and/or wrongfully terminating Plaintiff based upon a discriminatory and retaliatory basis and failing to comply with the law.

**AS A SEVENTEEN CAUSE OF ACTION**
**UNDER FEDERAL LAW**
**42 U.S.C. §1981**
**(DISCRIMINATION & HOSTILE WORK ENVIRONMENT)**
**(AGAINST ALL DEFENDANTS)**

186. Plaintiff, repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

187. 42 U.S. Code § 1981 provides: All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

188. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

189. The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

190. Defendants discriminated against Plaintiff on the basis of his race, color, national origin, and citizenship in violation of 42 U.S.C. §1981 and have suffered damages as set forth herein. Plaintiffs also claim unlawful retaliation under 42 U.S.C. §1981 for opposing Defendants unlawful employment practices.

191. As a result of Defendants' discrimination in violation of §1981, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of Plaintiff's employment which provided substantial compensation and benefits, thereby entitling him to injunctive and equitable monetary relief; and having suffered such anguish, humiliation,

distress, inconvenience and loss of enjoyment of life because of Defendants' actions, thereby entitling Plaintiff to compensatory damages.

192. As alleged above, Defendants acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages.

193. Plaintiff, as a member of the Hispanic race, was discriminated against by Defendants because of his race as provided under 42 USC § 1981 and has suffered damages as set forth herein.

194. Defendants subjected Plaintiff to a hostile work environment on the basis of his race and national origin.

195. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS AN EIGHTEENTH CAUSE OF ACTION**
**UNDER FEDERAL LAW**
**42 U.S.C. §1981 (RETALIATION)**
**(AGAINST ALL DEFENDANTS)**

196. Plaintiff repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

197. 42 U.S. Code § 1981 provides: All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

198. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

199. The rights protected by this section are protected against impairment by

nongovernmental discrimination and impairment under color of State law.

200. Plaintiff claims unlawful retaliation under 42 U.S.C. §1981 for opposing Defendants unlawful employment practices.

201. As a result of Defendants' discrimination in violation of §1981, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of Plaintiff's employment which provided substantial compensation and benefits, thereby entitling him to injunctive and equitable monetary relief; and having suffered such anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendants' actions, thereby entitling Plaintiff to compensatory damages.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants jointly and severally for all damages including unpaid wages, unpaid overtime, misappropriated tips, compensatory damages, punitive damages, and liquidated damages, prejudgment interest, post-judgment interest, statutory, attorneys' fees and costs, and emotional distress, in an amount to be determined at the time of trial and awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful conduct.

## **<u>JURY DEMAND</u>**

Plaintiff requests a jury trial on all issues to be tried.

Dated: New York, New York
January 19, 2024

Respectfully submitted,
**DEREK SMITH LAW GROUP PLLC**

By: */s/ Melissa Mendoza*
Melissa Mendoza, Esq.
One Penn Plaza, Suite 4905
New York, New York 10119

(212) 587-0760
*Attorneys for Plaintiff*